1  DAVID CHIU, State Bar #189542
   City Attorney
2  YVONNE R. MERÉ, State Bar #173594
   Chief Deputy City Attorney
3  PETER J. KEITH, State Bar #206482
   Chief Attorney
4  Neighborhood and Resident Safety Division
   CHRISTOPHER B. WHITMAN, State Bar #223636
5  Deputy City Attorney
   Fox Plaza
6  1390 Market Street, Seventh Floor
   San Francisco, California 94102-5408
7  Telephone:     (415) 554-4240
   Facsimile:     (415) 437-4644
8  E-Mail:        chris.whitman@sfcityatty.org

9  Attorneys for Plaintiff
   CITY AND COUNTY OF SAN FRANCISCO
10 by and through the SAN FRANCISCO PORT COMMISSION

11

12                      UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14

15 CITY AND COUNTY OF SAN                    Case No.
   FRANCISCO, a Municipal Corporation, by
16 and through the SAN FRANCISCO PORT        **PLAINTIFF CITY AND COUNTY OF SAN
   COMMISSION,                               FRANCISCO'S COMPLAINT FOR
17                                           NEGLIGENCE AND PROPERTY DAMAGE –
        Plaintiff,                           ADMIRALTY AND MARITIME CLAIM;
18                                           DEMAND FOR JURY TRIAL**
        vs.
19
   PRINCESS CRUISE LINES, LTD.; and
20 BAYDELTA MARITIME, LLC,

21      Defendants.

22

23

24        The CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation (the "City"),

25 operating by and through the San Francisco Port Commission (collectively, "CITY" or

26 "PLAINTIFF"), hereby alleges the matters stated below.

27 ///

28 ///

**NATURE OF THE ACTION**

1. This is an action under admiralty and maritime law for damages to a pier caused in an allision due to the negligent operation of a cruise ship and a tug boat in San Francisco, California, on October 2, 2019, and for substantial and related claims for breach of contract and indemnity under maritime law, federal law, and the state and common laws of the State of California.

2. PLAINTIFF seeks damages, indemnity, declaratory relief, and such other and further relief as this Court deems just and proper.

**JURISDICTION**

3. This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, and 28 U.S.C. § 1333, as hereinafter more fully appears.

4. Venue is proper in this Court because the marine casualty which gives rise to the claims herein occurred within the jurisdiction in the waters adjacent to Pier 27 and Pier 23 in San Francisco, California.  Venue is also proper in this district under 28 U.S.C. § 1391(b)(2), in that all or a substantial part of the events or omissions giving rise to the claims herein occurred in this district, and in that all or a substantial part of the property that is the subject of the action is situated in this district.

**PARTIES**

5. The PLAINTIFF is a municipal corporation duly organized and existing under the laws of the State of California.  Under the Burton Act, Stats. 1968, ch. 1333, PLAINTIFF has at all relevant times had complete authority to use, operate, maintain, manage, regulate, improve, and control the Port of San Francisco and its facilities on the eastern and northern waterfronts of San Francisco, including Pier 27 and Pier 23, which are adjacent to the San Francisco Bay.  At all relevant times, PLAINTIFF owned Pier 23.

6. PLAINTIFF is informed and believes, and on that basis alleges, that Defendant PRINCESS CRUISE LINES, LTD., d/b/a Princess Cruises ("PRINCESS"), is a corporation organized and existing under the laws of Bermuda, and authorized to do business in California, with its principal place of business in California at 24305 Town Center Drive, Santa Clarita, California, 91355, and at all times relevant herein was one of the owners and/or operators of the ocean going cruise ship "Star

Princess."  PLAINTIFF is informed and believes, and on that basis alleges, that PRINCESS is qualified to do business and is actually doing business in California.

7.     PLAINTIFF is informed and believes, and on that basis alleges, that Defendant BAYDELTA MARITIME, LLC ("BAYDELTA") is a company organized and existing under the laws of California, with its principal place of business at Pier 17, The Embarcadero, San Francisco, California, 94111, and at all times relevant herein was one of the owners and/or operators of the tugboat "Delta Cathryn."  PLAINTIFF is informed and believes, and on that basis alleges, that BAYDELTA is qualified to do business and is actually doing business in California.

## FACTUAL ALLEGATIONS

8.     On or about October 25, 2010, PLAINTIFF entered into Lease L-14605 with Baydelta Maritime, Inc. related to the lease of certain premises in San Francisco, California.  On or about September 14, 2011, PLAINTIFF consented to Baydelta Maritime, Inc. assigning and transferring its interest in Lease L-14605 to Baydelta Maritime, LLC, defendant herein, including a transfer of all obligations, covenants, conditions, provisions, and agreements stated in and related to Lease L-14605. Under Lease L-14605, BAYDELTA is required to indemnify PLAINTIFF for any accident or loss or damage to property under the jurisdiction of the Port Commission directly caused by BAYDELTA or its agents.  Under Lease L-14605, the aforementioned indemnity shall be enforceable against BAYDELTA regardless of the active or passive alleged negligence of PLAINTIFF, unless BAYDELTA could prove that a loss resulted solely and exclusively from the willful misconduct of the Port.  Under Lease L-14605, the prevailing party in any action arising out of the lease shall be entitled to reasonable attorneys' fees.

9.     On or about January 28, 2019, PRINCESS entered into a Berthing Agreement with PLAINTIFF related to PRINCESS's cruise ships using Pier 27 in San Francisco, California, including the use of Pier 27 by the "Star Princess."  The Berthing Agreement required PRINCESS to pay, on demand from PLAINTIFF, for all damage done to the Port's property or facilities by PRINCESS.  The Berthing Agreement also required PRINCESS to comply with all of the rules and regulations of the Port Commission and the Port's Schedule No. 5 (i.e., Tariff No. 5, issued on January 9, 2009).  Tariff No. 5 required each person conducting activities on any Port facility to defend and indemnify

PLAINTIFF against any and all claims, damage, and loss to property arising from the use of Port facilities.

10.     On October 2, 2019, at approximately 6:30 a.m., the cruise ship "Star Princess" attempted to dock at Pier 27 in San Francisco.  The tug boat "Delta Cathryn" provided assistance to the "Star Princess" in its efforts to maneuver into the berth for Pier 27.  The pier adjacent to Pier 27 was, and is, Pier 23.  During the attempted docking, the "Star Princess" pushed the "Delta Cathryn" into the north apron of Pier 23, resulting in an allision.

11.     The allision caused the destruction of three of the 18-inch diameter, octagonal shaped, vertical concrete piles supporting the north apron of Pier 23, as well as other significant damage to the fender system and deck of Pier 23.  The allision caused broken pieces of Pier 23 and its fendering system to float free in the bay, and increased the risk of debris floating off into the bay and sinking in the area between Pier 23 and Pier 27, creating navigational and environmental hazards.  As a result of the allision, PLAINTIFF is required to spend time, funds, and materials to investigate and repair the damage to the north apron of Pier 23.

12.     The damage to Pier 23 from the allision occurred within an approximately sixty-foot long section of the pier, and the total approximate length of Pier 23 is eight hundred feet.

13.     The unintended contact between Pier 23 and the "Delta Cathryn" caused by the movement of the "Star Princess" was not normal or standard contact that is typically involved in the berthing of a cruise ship at a pier or wharf.  Instead, during the allision the stern of the "Delta Cathryn" was pushed through some of the timber fender system components, pushed under and beneath the deck of Pier 23, and pushed directly into the sides of three of the vertical concrete piles supporting the north apron of Pier 23.

14.     At the time of the allision, it was daytime, visibility was clear, winds were light, and the tide at Pier 23 was an approximately 1.4 knot ebb.  There was no fog, mist, or rain to interfere with anyone's ability to observe the location, speed, and direction of each of the involved vessels, as well as the locations of the shoreline, Pier 27, and Pier 23.

15.     The location of Pier 23 was open and obvious to all persons involved in attempting to dock the "Star Princess" at Pier 27.  The condition of the timber fendering system on the north apron

of Pier 23 (e.g., the approximate number, size, location, relative positions, and arrangement of the timber), as well as the existence and location of the vertical piles supporting the deck of Pier 23 on its north apron, were open and obvious to all such persons.  Specifically, it was open and obvious that the existing timber fendering system on the north apron of Pier 23   was not capable of withstanding the forces generated by an allision with of an out-of-control cruise ship pushing a tug boat into Pier 23, i.e., it was open and obvious that that the fendering system would not be capable of protecting the vertical piles supporting the north apron of Pier 23 in the event of such an allision.

16.     In the minutes prior to the allision, the location of the "Delta Cathryn" vis-à-vis the north apron of Pier 23 and its fendering system, and the location of the "Star Princess" vis-à-vis the "Delta Cathryn," were open and obvious to all persons involved in attempting to dock the "Star Princess" at Pier 27.

17.     BAYDELTA was obligated and had an affirmative duty to exercise such care and skill as a prudent tug operator and/or navigator would customarily employ for the safe and proper performance of similar services under the circumstances.  PRINCESS was obligated and had an affirmative duty to exercise such care and skill as a prudent cruise ship operator and/or navigator would customarily employ for the safe and proper docking of the ship under the circumstances.  On October 2, 2019, the "Star Princess" failed to safely dock at Pier 27, and instead caused the "Delta Cathryn" to allide with the north apron of Pier 23.

18.     PRINCESS employed and/or otherwise retained and/or controlled the individuals who were aboard and authorized to control the "Star Princess," and each individual was working for PRINCESS within the course and scope of their employment at all times relevant herein.

19.     BAYDELTA employed and/or otherwise retained and/or controlled the individuals who were aboard and authorized to control the "Delta Cathryn," and each individual was working for BAYDELTA within the course and scope of their employment at all times relevant herein.

20.     On or about October 13, 2020, PLAINTIFF notified PRINCESS and BAYDELTA by separate letters that the Port would be incurring approximately $1,164,000 in costs and expenses in order to investigate and repair the damage caused to Pier 23 in the allision.  PLAINTIFF demanded that PRINCESS and BAYDELTA agree to pay for PLAINTIFF's investigation, repair costs, and

expenses.  PLAINTIFF's notice to BAYDELTA also requested that it indemnify PLAINTIFF under

Lease L-14605.  To date, neither PRINCESS nor BAYDELTA have agreed to these demands.

**FIRST CLAIM FOR RELIEF**

**FOR GENERAL MARITIME LAW NEGLIGENCE**

**(By PLAINTIFF against all Defendants)**

21.     PLAINTIFF realleges and incorporates by this reference, as if fully set forth herein,

paragraphs 1 through 20.

22.     On the date of the allision, Defendants, and each of them, owed a duty to those that

own the involved property, i.e., Pier 27 and Pier 23, to: (1) obey the rules of the road; (2) comply with

all applicable regulations and statutes; and (3) operate in a safe and reasonable manner under the

conditions.

23.     PLAINTIFF is informed and believes, and thereon alleges, that the aforesaid allision

was caused by the negligence of the tug "Delta Cathryn" and those charged with her operation and

control, and each of them, who failed to exercise the required care and skill in the operation of the tug

during the attempted docking of the "Star Princess" at Pier 27.  Specifically, the employees and/or

agents of BAYDELTA were not attentive to their duties, and they failed to control the position and

course of the "Delta Cathryn" and the "Star Princess" while maneuvering between Pier 27 and

Pier 23.

24.     PLAINTIFF is informed and believes, and thereon alleges, that the aforesaid allision

was caused by the negligence of the cruise ship "Star Princess," and those charged with her operation

and control, and each of them, who failed to exercise the required care and skill in the operation of the

cruise ship during the attempted docking of the "Star Princess" at Pier 27.  Specifically, the employees

and/or agents of PRINCESS were not attentive to their duties, and they failed to control the position

and course of the "Star Princess" while maneuvering between Pier 27 and Pier 23.

25.     As a direct and proximate result of the negligence of the Defendants, and each of them,

the north apron of Pier 23 sustained extensive physical damage.  By reason of the aforesaid allision

and resulting physical damage to Pier 23, PLAINTIFF sustained damages exceeding one million

dollars, including but not limited to the costs of investigating the damages, the costs of repairs to be

1    made to the pier, and other incidental and/or consequential damages, all of which will be subject to

2    proof at the time of trial.

3        26.     The aforesaid allision, and resulting physical damage and incidental and/or

4    consequential damages, were not caused or contributed to by the purported fault and/or negligence of

5    PLAINTIFF, of any person for whom PLAINTIFF was or is in any way responsible, but rather was

6    caused solely and proximately by, and due wholly to the fault and negligence of, Defendants, and each

7    of them, including the persons in charge of and/or responsible for the operation and navigation of the

8    "Star Princess" and the "Delta Cathryn," all of whom were servants and/or agents of the Defendants,

9    and each of them.

10                            **SECOND CLAIM FOR RELIEF**

11                            **FOR BREACH OF CONTRACT**

12                      **(By PLAINTIFF against all Defendants)**

13        27.     PLAINTIFF realleges and incorporates by this reference, as if fully set forth herein,

14    paragraphs 1 through 26.

15        28.     Under Lease L-14605, BAYDELTA is required to indemnify PLAINTIFF for any

16    accident or loss or damage to property under the jurisdiction of the Port Commission directly caused

17    by BAYDELTA or its agents.

18        29.     In the subject allision, BAYDELTA directly caused damage to PLAINTIFF's property,

19    specifically, to the north apron of Pier 23.  By reason of the aforesaid allision, PLAINTIFF sustained

20    damages exceeding one million dollars, including but not limited to the costs of investigating the

21    damages, the costs of repairs to be made to the pier, loss of use of the pier, and other incidental and/or

22    consequential damages.

23        30.     PLAINTIFF has duly performed all of its obligations under Lease L-14605 to be

24    performed on its part.

25        31.     For the foregoing reasons, PLAINTIFF is entitled to indemnification from

26    BAYDELTA, in an amount to be proven, for all costs and damages resulting from the subject allision.

27    ///

28    ///

32.     BAYDELTA breached Lease L-14605 by, among other acts and/or omissions, failing to indemnify PLAINTIFF for costs it has necessarily incurred as a result of the subject allision.

33.     The Berthing Agreement required PRINCESS to pay, on demand from PLAINTIFF, for all damage done to PLAINTIFF's property or facilities by PRINCESS.  The Berthing Agreement also required PRINCESS to comply with all of the rules and regulations of the Port Commission and the Port's Schedule No. 5 (i.e., Tariff No. 5, issued on January 9, 2009).  Tariff No. 5 required each person conducing activities on any Port facility to defend and indemnify PLAINTIFF against any and all claims, damage, and loss to property arising from the use of Port facilities.

34.     In the subject allision, PRINCESS directly caused damage to PLAINTIFF's property, specifically, to the north apron of Pier 23.  By reason of the aforesaid allision, PLAINTIFF sustained damages exceeding one million dollars, including but not limited to the costs of investigating the damages, the costs of repairs to be made to the pier, loss of use of the pier, and other incidental and/or consequential damages.

35.     PLAINTIFF has duly performed all of its obligations under the Berthing Agreement to be performed on its part, and duly performed all of its obligations under Tariff No. 5.

36.     For the foregoing reasons, PLAINTIFF is entitled to indemnification from PRINCESS, in an amount to be proven, for all costs and damages resulting from the subject allision.

37.     PRINCESS breached the Berthing Agreement and Tariff No. 5 by, among other acts and/or omissions, failing to indemnify PLAINTIFF for costs it has necessarily incurred as a result of the subject allision.

38.     Furthermore, an actual controversy exists between PLAINTIFF and PRINCESS, and between the PLAINTIFF and BAYDELTA, concerning their respective rights and duties, in that PLAINTIFF contends, and Defendants deny, that Defendants have an obligation under the aforementioned contracts to (a) reimburse PLAINTIFF for all damages caused to Pier 23 during the allision, and/or (b) indemnify PLAINTIFF for any and all damages arising from Defendants' use of Port facilities, including Piers 27 and 23.

39.     PLAINTIFF desires a judicial determination of its rights and duties, and a declaration that PLAINTIFF's interpretation of the agreements is correct.

40.     A judicial determination is necessary and appropriate so that PLAINTIFF may ascertain its rights and duties as it proceeds and continues to protect life and property by repairing or otherwise responding to the condition of the premises.

41.     For the foregoing reasons, PLAINTIFF has been, and will be, damaged by the conduct of BAYDELTA and PRINCESS, and PLAINTIFF is contractually entitled to damages and indemnity from such Defendants in an amount to be proven.

### PRAYER

WHEREFORE, PLAINTIFF prays for judgment as follows:

1.     For compensatory damages according to proof, including but not limited to, cost of investigations, repairs, loss of use, and economic loss;

2.     For incidental and consequential damages, including but not limited to damage to PLAINTIFF's property, according to proof;

3.     For prejudgment interest at the legal rate;

4.     For declaratory relief, including an order that Defendants shall defend PLAINTIFF and hold it harmless against all liability, loss, costs, and expenses incurred as a result of the allision and damage to Pier 23;

5.     For an award of reasonable court costs and attorneys' fees under contract and any applicable law;

6.     For trial by jury; and

///
///
///
///
///
///
///
///
///

1          7.      For such other and further relief as this Court deems just and proper.

2    Date:  September 30, 2022                    DAVID CHIU
                                                  City Attorney
3                                                 YVONNE R. MERÉ
                                                  Chief Deputy City Attorney
4                                                 PETER J. KEITH
                                                  Chief Attorney
5                                                 CHRISTOPHER B. WHITMAN
                                                  Deputy City Attorney
6

7                                          By:____/s/ Christopher B. Whitman_____
                                                  CHRISTOPHER B. WHITMAN
8
                                                  Attorneys for Plaintiff
9                                                 CITY AND COUNTY OF SAN FRANCISCO by and
                                                  through the SAN FRANCISCO PORT COMMISSION
10

11                              **DEMAND FOR JURY TRIAL**

12          PLAINTIFF hereby demands a trial by jury.

13   Date:  September 30, 2022                    DAVID CHIU
                                                  City Attorney
14                                                YVONNE R. MERÉ
                                                  Chief Deputy City Attorney
15                                                PETER J. KEITH
                                                  Chief Attorney
16                                                CHRISTOPHER B. WHITMAN
                                                  Deputy City Attorney
17

18                                         By:____/s/ Christopher B. Whitman_____
                                                  CHRISTOPHER B. WHITMAN
19
                                                  Attorneys for Plaintiff
20                                                CITY AND COUNTY OF SAN FRANCISCO by and
                                                  through the SAN FRANCISCO PORT COMMISSION
21

22

23

24

25

26

27

28